**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WENDY ROSS individually and on behalf of all others similarly situated, | Case No. 1:15-cv-2006 |
| *Plaintiff*, | |
| *v.* | |
| BLUE CROSS BLUE SHIELD ASSOCIATION, an Illinois corporation, | |
| *Defendant*, | |
| and | |
| INDEPENDENCE BLUE CROSS, a Pennsylvania corporation, individually and on behalf of a defendant class of similarly situated entities, | |
| *Defendant*. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Wendy Ross, individually and on behalf of all others similarly situated (the "Plaintiff Class" or "Class" as more specifically defined below) brings this Class Action Complaint and Demand for Jury Trial against Defendant Blue Cross Blue Shield Association ("BCBSA") individually, and against Defendant Independence Blue Cross ("Independence") both individually and as the representative of a proposed defendant class of all non-Anthem Inc. independent licensees of the Blue Cross Blue Shield Association (the "Defendant Class"). Collectively BCBSA, Independence, and the Defendant Class shall be referred to as the "Defendants." Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including

1

investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.      Plaintiff Ross brings this class action against Defendants for their failure to protect their customers' personally identifiable health information—including their full names, addresses, birthdates, social security numbers ("SSNs"), and health insurance information (collectively, "Sensitive Information")—despite Plaintiff Ross, and all other similarly situated insurance customers, having paid Defendants premiums for such protection.

2.      As health insurers, Defendants are required to protect their members' Sensitive Information by adopting and implementing the specific data security regulations and standards set forth under the Health Insurance Portability and Accountability Act ("HIPAA"). Defendants expressly and impliedly promise to provide these data protections to their customers in exchange for their customers' payments of premiums, including in their customer agreements and privacy policies, and on their websites.

3.      Defendants, who are all interconnected health insurance providers, created a nationwide insurance network covering over 100 million consumers in dozens of states. Defendant BCBSA, an umbrella organization that licenses the Blue Cross Blue Shield name, supervises over two dozen health insurance providers (including Defendant Independence and the other members of the Defendant Class) and sets strict policies and requirements for how they operate.

4.      A primary selling point of Defendants' health insurance network (which is controlled by Defendant BCBSA) is their "BlueCard" program, which allows customers to travel outside their own insurance area and receive covered health services in other states. Specifically, Plaintiff and the other Class members are able to travel to areas covered by entities such as non-

party Anthem, Inc., receive health services, and file insurance claims through the local Blue

Cross Blue Shield insurance provider.

5.     By Defendant BCBSA's specific requirement, members of the Defendant Class

represented through their marketing materials that Plaintiff and members of the Plaintiff Class

could utilize the entire BlueCard network in a seamless and safe way. Members of the Defendant

Class also represented through their privacy policies (and through their HIPAA obligations) that

Plaintiff and Plaintiff Class members' Sensitive Information would be secure and protected by

industry standards, without geographic limitation and without limitation on what BlueCard

entities they encountered. In fact, by its very nature, the BlueCard program and its extensive

network could not function, and would be of little to no value, if consumers could not move

within it and have their Sensitive Information secured and protected.

6.     Defendants' failure to uphold these promises, however, was dramatically revealed

through one of the largest data breaches of all time, affecting as many as 18.8 million customers

of the Defendant Class and BCBSA.

7.     Specifically, non-party Anthem, a featured member of the BlueCard network,

failed to secure its databases, which included the Sensitive Information of Plaintiff and the other

Plaintiff Class members. In light of non-party Anthem's mismanagement of its database

(including a failure to encrypt its data), and Defendants permitting Plaintiff Class members'

Sensitive Information to enter non-party Anthem's database even though it was not secure,

Defendants not only failed to properly prevent unauthorized access to consumer data, but in fact

allowed Plaintiff and the other Plaintiff Class members' Sensitive Information to be stolen.

8.     Defendant BCBSA—despite entering into uniform contracts with the Defendant

Class members that required their participation in the BlueCard program and numerous other

points of required conduct—failed to require or even suggest that the Defendant Class members (and other BlueCard affiliates) competently protect customer data. Likewise, Defendant Class members heavily advertised their participation in the BlueCard program—claiming that purchasing insurance through a Blue Cross Blue Shield affiliate would guarantee safe and accessible coverage throughout the Blue Cross Blue Shield network—as a valuable aspect of their insurance services.

9.      In turn, the Plaintiff and the other Plaintiff Class members paid substantial premiums to Defendants in exchange for insurance and participation in the nationwide Blue Cross network, and, likewise, paid for the implementation of industry-standard data security protections throughout that network—as the Defendant Class had promised.

10.      As such, a portion of the premiums paid were meant to ensure the use of industry-standard data security practices, including to protect data accessed and shared through the nationwide BlueCard network.

11.      Additionally, a portion of the premiums paid to the Defendant Class members were paid to BCBSA, and because BCBSA established and oversaw the nationwide Blue Cross plan, BCBSA received monetary benefits to which it was not entitled to from Plaintiff and the other Plaintiff Class members.

12.      Because Defendants failed to implement or require the promised security measures for their customers' data, despite Plaintiff and the other Plaintiff Class members having paid a portion of their premiums for such protection, Plaintiff and the other Plaintiff Class members overpaid for their insurance and now their Sensitive Information is in the hands of unknown third parties.

## PARTIES

13.     Plaintiff Wendy Ross is a natural person and citizen of the Commonwealth of Pennsylvania.

14.     Defendant Blue Cross Blue Shield Association is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 225 North Michigan Avenue, Chicago, Illinois 60601. BCBSA conducts business throughout this District, the State of Illinois, and the United States.

15.     Defendant Independence Blue Cross is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 1901 Market Street, Philadelphia, Pennsylvania 19103. Defendant Independence Blue Cross conducts business throughout this District, the State of Illinois, and the United States.

16.     All members of the proposed Defendant Class are independent licensees of BCBSA based in the United States and its territories, excluding any subsidiary of non-party Anthem, Inc.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (a) at least one member of the proposed Class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

18.     This Court has personal jurisdiction over Defendants because Defendant BCBSA is headquartered in Illinois, regularly conducts business in Illinois, and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated, in part, from Illinois. In addition, non-party Anthem, and Independence conduct significant business in Illinois and in this

District, including entering into contracts with Defendant BCBSA.

19.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because BCBSA resides in this District, and because the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated, in part, from this District. Venue is additionally proper because Defendant BCBSA is headquartered in this District.

**COMMON FACTUAL ALLEGATIONS**

*BCBSA and Members of the Defendant Class Failed to Require and Implement Proper Security Measures Throughout the Blue Cross Blue Shield Network*

20.     Defendant BCBSA oversees and licenses its name to numerous health insurance providers. In so doing, BCBSA sets forth a litany of requirements, rules, and policies that its licensees must follow. In this way, and because the Blue Cross Blue Shield name is so valuable to health insurance providers, BCBSA exerts tremendous control over its licensees and how they conduct their businesses. These include financial requirements, advertising and promotional requirements, as well as the requirement that all members of the Defendant Class take part in the BlueCard network.

21.     Unfortunately, notably absent from BCBSA's required procedures and policies are any standards for the protection of consumer data. Specifically, BCBSA does not set forth any required levels of encryption or industry standard practices to be followed. BCBSA fails to even mention any HIPAA privacy procedures in its licensee agreements.

22.     This glaring absence is compounded by the fact that BCBSA oversees and maintains a massive database of consumer information. This database, designed to facilitate the nationwide use of Defendant BCBSA's BlueCard program, encompasses over 100 million records and is accessible to over two-dozen entities compromising the Defendant Class.

23.     Defendant's BlueCard program is a widely advertised benefit of Blue Cross Blue

Shield insurance plans. Members of the Defendant Class, and BCBSA itself, heavily tout this

benefit. For example, as advertised by Independence:

> Independence Blue Cross has one of the most expansive provider networks in the
> area with more than 42,500 doctors and 100 hospitals, including the area's
> premier teaching hospitals. Plus, all of our plans cover urgent and emergency care
> across the country and around the world.

\*       \*       \*

> IBC is an independent, local organization. IBC is also an independent licensee of
> the Blue Cross and Blue Shield Association. This structure allows us to offer our
> members the best of both worlds: a community focus paired with the stability of
> the most recognized and trusted health insurance brand and the strength of the
> nation's most comprehensive health services network. In fact, nationwide, 90% of
> hospitals and 80% of doctors contract with Blue Cross® and Blue Shield®
> companies.

\*       \*       \*

> The Blue Cross and Blue Shield Association (BCBSA) is the national
> coordinating body for the federation of independent Blue Cross and Blue Shield
> plans. Blue Cross and Blue Shield plans contract with hospitals, physicians, and
> other health care providers to provide prepaid health care coverage to members.

> The 38 independent companies that form the BCBSA are among the country's
> oldest and largest health insurers, collectively covering more than 98 million
> people or 1 in 3 Americans.[1] Independence Blue Cross (IBC) is one of these 38
> independent licensees, and has been assigned a specific area to market its
> products — Bucks, Chester, Delaware, Montgomery, and Philadelphia counties in
> Pennsylvania.

    24.    Likewise, the home page for the BCBSA prominently features the benefits of the

BlueCard program:





25.     Essentially, a BlueCard carrier is permitted to travel outside of the region covered by their own plan (*e.g.*, Independence) to other states and receive covered health care services under another regional plan (*e.g.*, Anthem Blue Cross in California). In order for a health care provider in California to provide covered services to a Pennsylvania covered consumer, non-party Anthem Blue Cross must access the BCBSA master database to confirm enrollment. Likewise, when a Defendant Class member enrolls a new covered member, they input that consumers' personal and sensitive information into the master database.

26.     Unfortunately, even with such widespread access to voluminous Sensitive Information, BCBSA failed to properly ensure that its BlueCard affiliates employed industry standard security measures to protect the data downloaded or accessed from the BlueCard database, as evidenced by the January 2015 non-party Anthem data breach in which Plaintiff Class members' customer information was stolen in an unencrypted form.

27. But-for the representations and promises made by BCBSA regarding the BlueCard program, Plaintiff and the other Plaintiff Class members would not have filed insurance claims with entities other than their own health insurers, would not have allowed their Sensitive Information to be accessed by the other entities, and otherwise would not have paid as much for health insurance coverage.

28. The BlueCard program was therefore a material factor is choosing a BCBSA health insurance plan, and Plaintiff Class members' data security within that network was likewise a paramount factor in choosing a health insurance provider.

***Independence and the Defendant Class Promised to Keep Members' Sensitive Information Confidential.***

29. Through their various Privacy Policies (which all members receive) and other statements, members of the Defendant Class represented that they would protect their members' Sensitive Information and keep it confidential. For instance, the privacy policies and HIPAA policy of Independence states, in relevant part:

> Independence Blue Cross (IBC) is committed to protecting the privacy of our members' personal health information. Part of that commitment is to comply with the privacy rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA). That rule sets standards for covered entities, such as IBC, to protect personal health information and allow an individual access to his or her personal health information.
>
> IBC is compliant with the privacy rule and has implemented policies and procedures necessary to protect the privacy of our members' personal health information.
>
> *            *            *
>
> Independence Blue Cross values you as a customer, and protection of your privacy is very important to us. In conducting our business, we will create and maintain records that contain protected health information about you and the health care provided to you as a member of our health plans.
>
> *            *            *

9

We are required by certain federal and state laws to maintain the privacy of your protected health information.

*        *        *

IBC has implemented numerous security features to prevent the unauthorized release of or access to personal information. For example, all IBC employees are required to certify their understanding that personal information is considered confidential, that it is important to safeguard personal information, and that IBC will take appropriate action against any employee who fails to acknowledge these facts or adhere to the requisite security standards of conduct.

The IBC web portals use 128-bit encryption to help keep information secure. You will not be able to view certain pages of our site unless your computer has 128-bit encryption. You should also be aware that despite these and other security measures implemented by IBC, no security process is completely foolproof. We will continually assess our security procedures and modify them to protect your information and we ask that our visitors take the appropriate measures to protect their information.

*        *        *

We do not use or share your PHI without your permission unless the law allows us to do so. Before using or disclosing your PHI for other purposes, we'll obtain your written permission, also called an authorization. You may also direct us to share your PHI with someone you choose by giving us your written authorization. However, this authorization must include certain specific information in order to be valid.

30.     Independence's representations are substantially similar in form and import to those made by all Defendant Class members.

31.     In addition, the HIPAA privacy requirements are fully incorporated, both directly and implicitly into the Defendant Class members' contracts and privacy policies.

32.     Defendant Class members' statements about their data security and management practices—both through their privacy policies and other public representations—served to falsely inflate the advertised utility of their services, thus allowing them and/or their affiliates to charge members higher costs for health insurance. Specifically, the Defendant Class members represented that they would take affirmative and commercially reasonable measures to protect

consumers' Sensitive Information—including information made available to other BCBSA

entities through the BlueCard database—and actively prevent disclosure and unauthorized access

thereto.

***The Data Breach Revealed That Defendants Failed to Properly Protect their Members'***
***Sensitive Information.***

33.     In February 2015, non-party Anthem confirmed that its computer network was the

target of a "very sophisticated external cyber attack [in which the] attackers gained unauthorized

access to Anthem's IT system and . . . obtained personal information [of its] current and former

members such as their names, birthdays, medical IDs/social security numbers, street addresses,

email addresses and employment information, including income data."

34.     Early reports suggested that the Sensitive Information of over 80 million

consumers was stolen. Worse yet, reports indicated that the information was *not even encrypted*.

35.     On February 4th, 2015, non-party Anthem began notifying authorities and

consumers that it would be providing appropriate notification to affected members and

regulatory agencies as required by federal and state law.

36.     In the weeks following the breach, however, new information revealed that the

breach in fact went far beyond non-party Anthem's own customer database.

37.     Instead, because of non-party Anthem's participation in the BlueCard program

and access to BCBSA's master database, the breach extended to include all Defendant Class

members' customers who received medical treatment in a non-party Anthem coverage area over

a ten-year period.

38.     Subsequent reports, and statements from Anthem itself, confirmed that millions of

non-Anthem Blue Cross Blue Shield customer records (that is, the records of customers of

Independence and the other insurers constituting the Defendant Class) were compromised in the

breach Anthem first reported in February 2015 (hereinafter, the "Anthem Breach") and had in fact been accessed and stolen.

***Defendants Violated HIPAA and Industry Standard Data Protection Protocols.***

39.     HIPAA was enacted and became effective in 1996 to streamline and protect the use of electronic recordkeeping in the medical treatment and insurance fields.

40.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services create rules to streamline the standards for handling Sensitive Information, like the data collected and stored in unsecure database(s) by non-party Anthem. The Department of Health and Human Services established standards to protect electronic personal health information from unauthorized disclosure. These standards require entities to adopt administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of Sensitive Information.

41.     The Anthem Breach resulted from a variety of failures to follow HIPAA guidelines and industry standards. Among such deficient practices, the Anthem Breach shows that Defendants failed to implement or require, or inadequately implemented and required, information security policies or procedures such as those requiring adequate encryption or similar protection of Sensitive Information.

42.     Defendants' security failures demonstrate that they failed to honor their express and implied promises by failing to:

        a.     Maintain an adequate data security system to prevent data breaches;

        b.     Mitigate the risks of a data breach and unauthorized access to Sensitive Information;

c.     Adequately encrypt or otherwise protect Plaintiff's and the Plaintiff

Class's Sensitive Information;

d.     Ensure the confidentiality and integrity of electronic protected health

information it created, received, maintained, and transmitted in violation

of 45 CFR 164.306(a)(1);

e.     Implement technical policies and procedures for electronic information

systems that maintain electronic protected health information to allow

access only to those persons or software programs that have been granted

access rights in violation of 45 CFR 164.312(a)(1);

f.     Implement policies and procedures to prevent, detect, contain, and correct

security violations in violation of 45 CFR 164.308(a)(1);

g.     Protect against any reasonably anticipated threats or hazards to the

security or integrity of electronic protected health information in violation

of 45 CFR 164.306(a)(2);

h.     Protect against reasonably anticipated uses or disclosures of electronic

protected health information that are not permitted under the privacy rules

regarding individually identifiable health information in violation of 45

CFR 164.306(a)(3);

i.     Ensure compliance with the HIPAA security standard rules by its

workforce in violation of 45 CFR 164.306(a)(4); and

j.     Effectively train all members of its workforce on the policies and

procedures with respect to protected health information as necessary and

appropriate for the members of its workforce to carry out their functions

and to maintain security of protected health information in violation of 45
CFR 164.530(b).

43.     Had Defendants implemented and required proper security protocols across the
BlueCard network to properly encrypt and otherwise protect their members' Sensitive
Information, the consequences of the Anthem Breach would have been avoided (as it would have
been nearly infeasible to extract Plaintiff Class members' Sensitive Information from the
BlueCard Network had Defendants required it to have been encrypted).

44.     Worse yet, Defendants knew or should have known that a security breach could
result from their deficient security and privacy practices, as HIPAA and industry standard
protections exist *specifically* to prevent unauthorized access to Sensitive Information.

45.     Even though Defendant Class members' customers both expected and paid for the
above-described security measures as part of their insurance premiums (*i.e.*, that HIPAA-
mandated and industry standards would have been used to protect their Sensitive Information),
these security measures were not implemented by Defendant Class members, nor required by
BCBSA. This resulted in the unsecured release of Plaintiff Class members' Sensitive
Information and the loss of paid-for data protection services.

***Plaintiff Wendy Ross's Experience.***

46.     Plaintiff Ross is a current member of Defendant Independence.

47.     In order to purchase health insurance coverage from Independence, Plaintiff and
her husband jointly paid premiums and provided Independence Blue Cross with Sensitive
Information in exchange for an agreement with Independence to receive health insurance
coverage and to protect her Sensitive Information in accordance with HIPAA and industry
standards.

48.     As such, Ross paid Independence for health insurance and, among other things, membership in the BlueCard network and the protection of her Sensitive Information.

49.     In or around 2014, Plaintiff traveled to New York and received covered medical services. Taking advantage of the BlueCard program provided by Independence and BCBSA, Plaintiff Ross was treated and submitted her Independence insurance to her physician who in turn sent it to non-party Empire Blue Cross Blue Shield (a non-party Anthem company), which processed her claim.

50.     Thereafter, Plaintiff's Sensitive Information was transferred by BCBSA and Independence to Anthem, and stored by non-party Anthem in its database.

51.     In January 2015, non-party Anthem's data was accessed without authorization by a third party and according to non-party Anthem and other publicly available information, Plaintiff's Sensitive Information was stolen.

52.     Had Ross known that participation in the BlueCard network would not include standard security procedures and methods of protecting and storing her Sensitive Information throughout the entire network, she would have paid substantially less for Independence health care services or would not have paid at all (*i.e.*, the value of health care services *without* adequate protection of Sensitive Information in the BlueCard network is worth substantially less than the value of such services *with* adequate protection).

53.     Because Defendants BCBSA and Independence did not ensure that Plaintiff's Sensitive Information would be protected with industry standard measures in the BlueCard network, Plaintiff did not receive the entirety of the services she paid for and, as a result, she paid more than she otherwise would have for such services.

## PLAINTIFF CLASS ALLEGATIONS

54.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a) and

23(b)(3) on behalf of herself and a Plaintiff Class of similarly situated individuals defined as

follows:

> All individuals in the United States and its territories (i) who paid money to a
> member of the Defendant Class in exchange for health care insurance, and (ii)
> who had their own Sensitive Information, or that of a dependent or domestic
> partner on the same insurance plan, compromised as a result of the data breach
> confirmed by non-party Anthem in or around February 2015.

Excluded from the Plaintiff Class are: (1) any Judge or Magistrate presiding over this action and

members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors,

predecessors, and any entity in which the Defendants or their parents have a controlling interest

and its current or former employees, officers and directors; (3) persons who properly execute and

file a timely request for exclusion from the Plaintiff Class; (4) persons whose claims in this

matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel

and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such

excluded persons.

55.     **Numerosity**: The exact number of Plaintiff Class members is unknown to

Plaintiff at this time, but on information and belief, the Plaintiff Class is compromised of

millions of individuals throughout the United States, making joinder of each individual member

impracticable. Ultimately, the members of the Plaintiff Class will be easily identified through

Defendants' records.

56.     **Commonality and Predominance**: Common questions of law and fact exist as to

all Plaintiff Class members and predominate over any questions affecting only individual

Plaintiff Class members, and include, but are not limited to:

16

a. Whether Defendants took steps and measures to adequately safeguard Plaintiff's and the other Plaintiff Class members' Sensitive Information;

b. Whether Defendants storing and transferring of Plaintiff's and the other Plaintiff Class members' Sensitive Information in the manner alleged violated industry standards and/or HIPAA;

c. Whether implied or express contracts existed between Defendants, on the one hand, and Plaintiff and the other members of the Plaintiff Class on the other;

d. Whether Defendants' conduct described herein constitutes a breach of their contracts with Plaintiff and the other members of the Plaintiff Class; and

e. Whether Defendants should retain the monies paid by Plaintiff and the other members of the Plaintiff Class to protect their Sensitive Information.

57. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Plaintiff Class. Plaintiff and the other Plaintiff Class members sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the other members of the Plaintiff Class.

58. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other Plaintiff Class members, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the other Plaintiff Class members, and Defendants have no defenses unique to Plaintiff.

59. **Policies Generally Applicable to the Plaintiff Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds

generally applicable to the Plaintiff Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Plaintiff Class, and making final injunctive relief appropriate with respect to the Plaintiff Class as a whole. Defendants' practices challenged herein apply to and affect the Plaintiff Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Plaintiff Class as a whole, not on facts or law applicable only to Plaintiff.

60.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual Plaintiff Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual Plaintiff Class members to obtain effective relief from Defendants' misconduct. Even if Plaintiff Class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## THE DEFENDANT CLASS

61.     This action is also brought as a defendant class action under Federal Rule of Civil Procedure 23, with the Defendant Class defined as follows:

> All independent licensees of the Blue Cross Blue Shield Association, excluding any entity that is a subsidiary or division of Anthem, Inc.

62.   **Ascertainably:** The particular members of the Defendant Class are capable of being described without difficult managerial or administrative problems. The Defendant Class members are readily identifiable from the information and records in the possession or control of Defendant Blue Cross Blue Shield Association or its affiliated entities and agents.

63.   **Numerosity**: The Defendant Class is comprised of at least twenty-five entities located throughout the United States, making joinder of each individual member impracticable. Ultimately, Defendant Class members will be easily identified through BCBSA's records.

64.   **Commonality and Predominance**: Common questions of law and fact exist as to all Defendant Class members and predominate over any questions affecting only individual members, and include, but are not limited to:

   a.   Whether Defendant Class members received and stored Sensitive Information from Plaintiff and the other Plaintiff Class members;

   b.   Whether Defendant Class members used sufficient data security measures to protect consumers' Sensitive Information;

   c.   Whether Defendant Class members were directed or required by Defendant BCBSA to protect consumers' Sensitive Information using industry standard practices;

   d.   Whether Defendant Class members complied with their obligations under HIPAA; and

   e.   Whether Defendant Class members should retain the monies paid by Plaintiff and the other Plaintiff Class members to protect their Sensitive Information.

65.   **Typicality**: Defendant Independence's defenses are typical of the defenses of the other Defendant Class members and will be based on the same legal and factual theories. Upon

19

information and belief, Defendant Independence and the other Defendant Class members have entered into standard and uniform agreements with Defendant BCBSA (and each other) that are substantively similar if not identical.

66.     **Adequate Representation**: Defendant Independence, in representing its own interests, will also fairly and adequately represent and protect the interests of the other Defendant Class members. Independence will retain counsel experienced in defending class actions and actions involving unlawful commercial practices. Independence, based upon information and belief, does not have any interests that might cause it to not vigorously defend this action.

67.     **Policies Generally Applicable to the Class**: Certification of a defendant class under Fed.R.Civ.P. 23 (b)(3) is appropriate because Defendants have acted or refused to act in a similar manner, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Defendant Class, and making final injunctive relief appropriate with respect to the Plaintiff Class as a whole.

68.     **Superiority**: Certification of a defendant class under Fed.R.Civ.P. 23 (b)(3) is appropriate as to the Defendant Class members in that common questions predominate over any individual questions and a defendant class action is superior for the fair and efficient adjudication of this controversy. A defendant class action will cause an orderly and expeditious administration of Defendant Class members' defenses, if any, and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

## CLAIMS ALLEGED

### FIRST CAUSE OF ACTION
**Breach of Contract**
**(On behalf of Plaintiff Ross and the other Plaintiff Class members**
**as against the Defendant Class)**

69.     Plaintiff incorporates the allegations contained in Paragraphs 1-68 above, as if

fully set forth herein.

70.    Plaintiff and the other Plaintiff Class members each paid money to a member of the Defendant Class in exchange for their promise to provide health care insurance coverage.

71.    In addition to providing health care insurance coverage, the premiums Plaintiff Ross and the other Plaintiff Class members paid to the Defendant Class members were meant to provide for membership and use of the BlueCard network, as well as the use of industry-standard security protections for their Sensitive Information.

72.    Thus, both the use of the BlueCard network and the implementation of industry-standard protection for their Sensitive Information were material terms of the Plaintiff Class's agreements with the Defendant Class.

73.    In their written agreements as well as their privacy notices, members of the Defendant Class expressly promised Plaintiff and the other Plaintiff Class members that they only disclose health information when required to do so by federal or state law or with consent. Defendant Class members further promised that they would protect their members' Sensitive Information in accordance with HIPAA and industry standard procedures.

74.    The contracts required Defendant Class members to safeguard Plaintiff's and the other Plaintiff Class members' Sensitive Information to prevent its disclosure and/or unauthorized access.

75.    Plaintiff and the other Plaintiff Class members fully performed their obligations under the contracts.

76.    Defendant Class members did not adequately safeguard Plaintiff's and the other Plaintiff Class members' protected Sensitive Information. Specifically, Defendant Class members failed to ensure that members who used the BlueCard network would have their

Sensitive Information secured using industry-standard measures.

77.     The failure to meet these promises and obligations constitutes an express breach of contract. In other words, Defendant Class members breached their contracts with Plaintiff and the other Plaintiff Class members by failing to implement sufficient security measures to protect Plaintiff and the other Plaintiff Class members' Sensitive Information as described herein.

78.     The Defendant Class members' failure to fulfill their data security and management promises resulted in Plaintiff Ross and the other Plaintiff Class members receiving services that were of less value than they paid for (*i.e.*, health care insurance coverage without adequate data security and management practices).

79.     Stated otherwise, because Plaintiff and the other Plaintiff Class members paid for privacy protections that they did not receive—even though such protections were a material part of their contracts with Defendant Class members—Plaintiff and the other Plaintiff Class members did not receive the full benefit of their bargain.

80.     As a result of the data breach, Plaintiff and the other Plaintiff Class members suffered damages in the amount of the difference between the price they paid for Defendant Class members' services as promised and the actual diminished value of their health care services.

**SECOND CAUSE OF ACTION**
**Breach of Implied Contract**
**(in the alternative to Count One)**
**(On Behalf of Plaintiff and the other Plaintiff Class members**
**as against the Defendant Class)**

81.     Plaintiff Ross incorporates the foregoing allegations as if fully set forth herein, excluding paragraphs 69 through 80.

82.     In order to benefit from Defendant Class members' services, Plaintiff and the

other Plaintiff Class members disclosed Sensitive Information to Defendant Class members, including their names, addresses, Social Security numbers, dates of birth, and sensitive medical information.

83.     By providing that Sensitive Information, and upon the Defendant Class members' acceptance of such information, Plaintiff and the other Plaintiff Class members, on the one hand, and the Defendant Class members on the other hand, entered into implied contracts whereby the Defendant Class members were obligated to take reasonable steps to secure and safeguard that information, including use of that data throughout the BlueCard network.

84.     Without such implied contracts, Plaintiff and the other Plaintiff Class members would not have provided their Sensitive Information to Defendant Class members.

85.     As described herein, Defendant Class members did not take reasonable steps to safeguard Plaintiff's and the other Plaintiff Class members' Sensitive Information or to ensure the protection of Plaintiff's and the other Plaintiff Class members' Sensitive Information throughout the BlueCard network.

86.     Because the Defendant Class members failed to take reasonable steps to safeguard their Sensitive Information throughout its use in the BlueCard network, the Defendant Class members breached their implied contracts with Plaintiff and the other Plaintiff Class members.

87.     The failure to meet these promises and obligations constitutes a breach of contract. In other words, the Defendant Class members breached the contracts by failing to implement sufficient security measures to protect Plaintiff and the other Plaintiff Class members' Sensitive Information as described herein.

88.     The Defendant Class members failure to fulfill their data security and management promises resulted in Plaintiff and the other Plaintiff Class members receiving

services that were of less value than they paid for (*i.e.*, the provision of health care insurance coverage without adequate data security and management practices, and the provision of insecure access to and usage of the BlueCard network).

89.     Stated otherwise, because Plaintiff and the other Plaintiff Class members paid for privacy protections that they did not receive—even though such protections were a material part of their contracts with the Defendant Class members —Plaintiff and the other Plaintiff Class members did not receive the full benefit of their bargain.

90.     As a result of the Defendant Class members' insufficient security, Plaintiff and the other Plaintiff Class members suffered damages in the amount of the difference between the price they paid for the Defendant Class members' services as promised and the actual diminished value of its health care services.

### THIRD CAUSE OF ACTION
**Restitution/Unjust Enrichment**
**(in the alternative to Counts One and Two)**
**(On Behalf of Plaintiff and the other Plaintiff Class members**
**as against the Defendant Class)**

91.     Plaintiff Ross incorporates the foregoing allegations as if fully set forth herein, excluding paragraphs 69 through 90.

92.     If the Court finds Plaintiff's and the other Plaintiff Class members' contracts with the Defendant Class members for protection of their Sensitive Information invalid, non-existent, or otherwise unenforceable, Plaintiff and the other Plaintiff Class members may be left without any adequate remedy at law.

93.     Plaintiff and the other Plaintiff Class members conferred a monetary benefit on the Defendant Class members in the form of fees paid for health care insurance coverage, which included use of the BlueCard network. The Defendant Class members appreciated or had

knowledge of the benefits conferred upon them by Plaintiff and the other Plaintiff Class members.

94.     The fees for health insurance coverage that Plaintiff and the other Plaintiff Class members paid to the Defendant Class members were supposed to be used by the Defendant Class members, in part, to pay for the administrative costs of data management and security, and to ensure the safeguarding of their Sensitive Information throughout the BlueCard network.

95.     Under principles of equity and good conscience, the Defendant Class members should not be permitted to retain the money belonging to Plaintiff and the other Plaintiff Class members, because the Defendant Class members failed to implement data management and security measures that Plaintiff and the other Plaintiff Class members paid for and are otherwise mandated by HIPAA and industry standards.

96.     Accordingly, as a result of the Defendant Class members' conduct, Plaintiff and the other Plaintiff Class members suffered damages in the amount of the difference between the price they paid for the Defendant Class members' services as promised and the actual diminished value of the health care services received.

### FOURTH CAUSE OF ACTION
#### Restitution/Unjust Enrichment
**(On Behalf of Plaintiff and the other Plaintiff Class Members
as against Defendant BCBSA)**

97.     Plaintiff Ross incorporates the foregoing allegations as if fully set forth herein.

98.     Plaintiff and the other Plaintiff Class members were not directly in a contractual relationship with Defendant BCBSA. As such, Plaintiff and the other Plaintiff Class members are left without any adequate remedy at law.

99.     Plaintiff and the other Plaintiff Class members conferred a monetary benefit on Defendant BCBSA in the form of fees paid for health care insurance coverage by virtue of the

Blue Cross License Agreement. Defendant BCBSA appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the other Plaintiff Class members.

100.     The fees for health insurance coverage that Plaintiff and the other Plaintiff Class members were supposed to be used by Defendant BCBSA, in part, to pay for the administrative costs of data management and security.

101.     Under principles of equity and good conscience, Defendant BCBSA should not be permitted to retain the money belonging to Plaintiff and the other Plaintiff Class members, because, while Defendant BCBSA benefitted substantially from the implementation and advertisement of the BlueCard network (in the form of customers' premium payments induced by the opportunity to utilize the network), it failed to establish any set of policies or procedures to ensure the adequate protection of Plaintiff's and the other Plaintiff Class members' Sensitive Information.

102.     Accordingly, as a result of Defendant BCBSA's conduct, Plaintiff and the other Plaintiff Class members suffered damages in the amount of the difference between the price they paid for the health insurance coverage as promised and the actual diminished value of the health care services received.

### FIFTH CAUSE OF ACTION
**Breach of Implied Contract – Third Party Beneficiary**
**(in the alternative to Counts One through Four)**
**(On Behalf of Plaintiff and the other Plaintiff Class members**
**as against all Defendants)**

103.     Plaintiff Ross incorporate the foregoing allegations as if fully set forth herein, excluding paragraphs 69 through 102.

104.     Defendant BCBSA, and each member of the Defendant Plaintiff Class individually, entered into a contract in the form of the Blue Cross License Agreement.

105.     The Blue Cross License Agreement contemplates, in part, numerous benefits for Plaintiff and the other Plaintiff Class members.

106.     For example, the Blue Cross License Agreement contains specific Membership Standards that BCBSA requires of the Defendant Class members, such as (1) "[a] Plan shall be operated in a manner that provides reasonable financial assurance that it can fulfill its contractual obligations to its customers"; (2) "[a] Plan shall be operated in a manner responsive to customer needs and requirements"; and (3) "[a] Plan shall effectively and efficiently participate in each national program as from time to time may be adopted by the Member Plans for the purposes of providing portability of membership between the Plans and ease of claims processing for customers receiving benefits outside of the Plan's Service Area…. Such programs are applicable to Blue Cross and Blue Shield Plans, and include:… BlueCard Program."

107.     In addition, implied the Blue Cross License Agreement are both BCBSA's and the Defendant Class members' obligation to comply with the privacy requirements of HIPAA, which is itself in existence to protect consumer information.

108.     Plaintiff and the other Plaintiff Class members are intended beneficiaries of the Blue Cross License Agreement, inasmuch as the BlueCard network is intended to offer a beneficial service to them.

109.     BCBSA and members of the Defendant Class breached the Blue Cross License Agreement by failing to require, implement, and/or enforce appropriate and necessary data security measures among the constituent BlueCard network affiliates. BCBSA and members of the Defendant Class failure is evidenced by the fact that BlueCard network participant Anthem did not encrypt either its own members' Sensitive Information, or the Sensitive Information of other BlueCard network members, and allowed unauthorized third party access to its database.

110.    BCBSA and the Defendant Class members' failure to fulfill their data security and management obligations resulted in Plaintiff and the other Plaintiff Class members receiving services that were of less value than they paid for (*i.e.*, the provision of health care insurance coverage without adequate data security and management practices). As such, Plaintiff and the other Plaintiff Class members were harmed by way of BCBSA's and the Defendant Class members' breach of contract.

111.    As a result of the Defendant Class members' breach, Plaintiff and the other Plaintiff Class members suffered damages in the amount of the difference between the price they paid for their health insurance as promised and the actual diminished value of the health care services.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Wendy Ross, individually and on behalf of the other Plaintiff Class members, respectfully requests that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Plaintiff Class defined above, appointing Plaintiff as Plaintiff Class representative, and appointing her counsel as Plaintiff Class Counsel;

B.    Certifying this case as a defendant class action on behalf of the Defendant Class defined above, and appointing Defendant Independence Blue Cross as representative of the Defendant Class;

C.    Declaring that Defendants' actions, as described above, constitute (i) Breach of Express Contract, (ii) Breach of Implied Contract (in the alternative to Breach of Express Contract), and (iii) Unjust Enrichment (in the alternative to Breach of Express Contract and Breach of Implied Contract);

C.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Plaintiff Class, including: (i) an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein, and (ii) requiring Defendants to protect all data collected through the course of their business in accordance with HIPAA and industry standards;

D.     Awarding damages to Plaintiff and the other Plaintiff Class members in an amount to be determined at trial;

E.     Awarding restitution to Plaintiff and the other Plaintiff Class members in an amount to be determined at trial;

F.     Awarding Plaintiff and the other Plaintiff Class members their reasonable litigation expenses and attorneys' fees;

G.     Awarding Plaintiff and the other Plaintiff Class members pre and post-judgment interest to the maximum extent allowable by law; and

H.     Awarding such other and further legal or equitable relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**WENDY ROSS,** individually and on behalf of all
others similarly situated,

By: _/s/ Adam J. Levitt_____          By: _/s/ Ari J. Scharg___

Adam J. Levitt                          Jay Edelson
alevitt@gelaw.com                       jedelson@edelson.com
Edmund S. Aronowitz                     Rafey S. Balabanian
earonowitz@gelaw.com                    rbalabanian@edelson.com
**GRANT & EISENHOFER P.A.**              Ari J. Scharg
30 North LaSalle Street                 ascharg@edelson.com
Chicago, Illinois 60602                 Christopher L. Dore
Tel: 312-214-0000                       cdore@edelson.com
                                        Benjamin S. Thomassen
                                        bthomassen@edelson.com
                                        **EDELSON PC**
                                        350 North LaSalle Street, Suite 1300
                                        Chicago, Illinois 60654
                                        Tel: 312-589-6370

                                        David S. Senoff*
                                        dsenoff@cbmclaw.com
                                        **CAROSELLI BEACHLER MCTIERNAN
                                          & CONBOY**
                                        1845 Walnut Street, Fifteenth Floor
                                        Philadelphia, Pennsylvania 19103
                                        Tel: 215-609-1350

                                        *Admission *pro hac vice* to be sought.

*Counsel for Plaintiff and the Proposed Class*